2016 JAN 19 AM 8: 41

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72828-8-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| YOUNGKEUN K. LEE | ) ) | |
| Appellant. | ) ) | FILED: January 19, 2016 |
| | ) | |

APPELWICK, J. — Lee appeals the trial court's refusal to conduct an evidentiary hearing before entering the order of restitution. The State correctly concedes this was error. Lee argues that he is entitled to confront the State's witnesses on remand and is entitled to a jury determination of the facts necessary to set a restitution amount. We reverse and remand for an evidentiary hearing.

## FACTS

On July 6, 2012, Jose Lesaca, a Marymoor Park employee, confronted Youngkeun Lee when he saw Lee sleeping in a van in the park. Lesaca told Lee that he could not sleep in the park. Lee was agitated when Lesaca told him he had to leave. Lee eventually left the park after Lesaca threatened to call the police.

On July 10, 2012, Lesaca was working in the park. Lee approached him with a baseball bat, and hit Lesaca on the left shoulder. Lesaca was not injured.

Lesaca drove away so that he could report the incident. Lee followed Lesaca and parked next to him. Lee got out of his van, and threw a can filled with a liquid at Lesaca. The can and liquid hit Lesaca's car and his arm. Lee again grabbed his bat and approached Lesaca. Lesaca exited his vehicle and attempted to grab the bat. Lesaca was twisted around so that he ended up facing away from Lee. Lee then held the bat around the front of Lesaca's neck and attempted to strangle him. Lesaca had to push hard on the bat to keep it from making contact with his neck. The bat never made contact with Lesaca's neck. Lesaca's coworkers arrived and pulled Lee off of Lesaca.

Lee stipulated to the facts set forth in the certification for probable cause. He pleaded guilty to assault in the fourth degree and attempted bail jumping. By pleading guilty, Lee agreed to pay "restitution TBD [(to be decided)]." The trial court scheduled a restitution hearing for November 4, 2014.

At the November 4 hearing, the trial court noted that the State provided voluminous paper work documenting the restitution claim. The State sought nearly $52,000 to be paid to King County Risk Management representing worker's compensation, because Lesaca took time off work allegedly connected to the injury. The State also sought $144.69 in medical bills to be paid directly to Lesaca.

Lee argued that the trial court should not award any restitution, because there was no causation—Lesaca was not injured during the struggle with Lee. Lee pointed out that the bat did not touch Lesaca and that he stated that he was not injured by the bat strike. He stated that the restitution request constituted

2

insurance fraud. In the alternative, Lee asserted that the court should continue the matter for an evidentiary hearing.

The State countered that Lesaca's injuries occurred when Lesaca was struggling with Lee to prevent Lee from choking him. Lesaca suffered from back pain, among other things, and eventually had surgery. The State claimed that there was a great deal of evidence that a causal connection existed between what happened and the documented injuries—medical reports and the self-reporting of the victim. It asserted that an evidentiary hearing was unnecessary.

The trial court ultimately decided to continue the matter so that it could review the materials more carefully. The restitution hearing was continued until November 18, 2014. At the November 18th hearing, the trial court determined that it was still not prepared to decide whether it needed to hold any further hearing. The next day, without holding an additional hearing, the trial court entered an order of restitution. The trial court awarded Lesaca $144.69 and awarded King County Risk Management $51,850.32. Lee appeals.

## DISCUSSION

Lee argues that the trial court denied him due process when it did not conduct an evidentiary hearing after he disputed facts material to the restitution demand. He further asserts that, on remand, he must be afforded the opportunity to confront the State's witnesses and have a meaningful opportunity to refute the State's evidence with his own witnesses. Finally, he contends that the Sixth Amendment and article I, section 21 of the Washington State Constitution require a jury determination of the facts necessary to set a restitution amount.

3

I. Evidentiary Hearing

Lee argues that the trial court erred when it failed to hold an evidentiary hearing, because he disputed material facts supporting the State's restitution claim. The State concedes that the trial court did not hold a proper evidentiary hearing and that this court should remand the case for an evidentiary hearing on restitution.

If the defendant disputes facts relevant to determining restitution, the State must prove the damages at an evidentiary hearing by a preponderance of the evidence. State v. Kinneman, 155 Wn.2d 272, 285, 119 P.3d 350 (2005).

During the restitution hearing, Lee argued that the State could not prove by a preponderance of the evidence that the assault caused Lesaca's injuries. Lee requested an evidentiary hearing. The trial court continued the first restitution hearing on November 4, 2014 so that it could determine if an evidentiary hearing was necessary. The trial court specifically noted that it was not setting the matter for an evidentiary hearing. At the continued hearing on November 18, 2014, the trial court determined that it was not prepared to determine whether it needed to hold any further hearing, because it had not yet read Kinneman. The trial court entered an order of restitution without holding an additional hearing.

In light of Kinneman, and the fact that the trial court never held a proper evidentiary hearing, we accept the State's concession. We reverse the order setting restitution and remand for an evidentiary hearing.

II. Right to Confrontation at Evidentiary Hearing

Lee argues that, on remand, due process requires that he have the opportunity to confront the State's evidence[1] and call witnesses.[2] He cites to Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) to support his assertion. In Morrissey, the United States Supreme Court considered whether the requirements of due process in general apply to parole revocations. Morrissey, 408 U.S. at 481. The Morrissey court held that, among other requirements, due process requires that the defendant be allowed to cross-examine adverse witnesses at a parole revocation hearing unless good cause is shown not to allow confrontation. Id. at 489.

Lee cites to several Washington cases in which the courts have applied the holding in Morrissey to create due process requirements for postsentencing hearings. But, Morrissey and the cases cited by Lee are distinguishable. Unlike in a restitution context, those cases involved the termination of the defendant's liberty interest. See State v. Dang, 178 Wn.2d 868, 883, 312 P.3d 30 (2013) (revocation of an insanity acquittee's conditional release); State v. Abd-Rahmaan, 154 Wn.2d 280, 291, 111 P.3d 1157 (2005) (right to confront witnesses at sentence modification hearings); State v. Dahl, 139 Wn.2d 678, 688, 990 P.2d 396 (1999) (the revocation of a Special Sex Offender Sentencing Alternative); State v.

---

[1] Lee ostensibly raises this argument now, on appeal, because the State argued below that while Kinneman requires an evidentiary hearing, it does not require that the State provide live testimony from its witnesses.

[2] The State does not appear to contest Lee's assertion that he is entitled to call his own witnesses to refute the State's evidence during the evidentiary hearing. Therefore, we focus on Lee's argument that due process dictates he has the right to confront the State's witnesses.

Nelson, 103 Wn.2d 760, 762-63, 697 P.2d 579 (1985) (revocation of a conditional suspended sentence). Neither Morrissey nor any of the Washington state cases carved out additional due process protections in the context of restitution hearings.

In fact, at least one Washington court has rejected Lee's argument. In State v. Fambrough, 66 Wn. App. 223, 224, 226, 831 P.2d 789 (1992),[3] the defendant argued that he had the right to cross-examine and confront the preparer of a professional estimate to repair a scooter at the restitution hearing. In rejecting this argument, the Fambrough court specifically noted that restitution involves no potential loss of liberty, and that due process is "substantially relaxed" at restitution hearings. Id. at 226-27.

The rules of evidence do not apply at restitution hearings. State v. Pollard, 66 Wn. App. 779, 784, 838 P.2d 51 (1992). But, the evidence presented to the trial court must still meet due process requirements such as providing the defendant an opportunity to refute the evidence presented, and requiring that the evidence be reliable. Id. at 784-85. Lee has cited to no authority stating that due process dictates the State must present live witnesses so that he may refute that evidence by confronting those witnesses. Therefore, we reject this argument.

---

[3] Fambrough was a juvenile case. 66 Wn. App. at 224-25. Although the defendant in Fambrough based his argument on a statute under the Juvenile Justice Act, RCW 13.40.150(1), the court's reasoning was not limited to the juvenile justice context. See id. at 226.

III. Jury Determination

Lastly, Lee argues that both the Sixth Amendment and article I, section 21 of the Washington State Constitution require a jury determination of the facts necessary to set a restitution amount.

That the Sixth Amendment requires a jury determination for restitution was already squarely rejected by the Washington Supreme Court in Kinneman. See 155 Wn.2d. at 282. Although Lee rejects the Kinneman court's reasoning, Kinneman is still good law in Washington. A decision by the Washington Supreme Court is binding on all lower courts in the state. State v. Pedro, 148 Wn. App. 932, 950, 201 P.3d 398 (2009). Unless and until the Washington Supreme Court or the United States Supreme Court rule otherwise, Kinneman dictates that Lee's argument is without merit.[4]

Next, Lee categorizes restitution as "damages" and argues that article I, section 21's mandate that the right of trial by jury remains inviolate, requires a jury determination of damages. Lee cites to Sofie v. Fibreboard Corp., 112 Wn.2d 636, 648, 771 P.2d 711, 780 P.2d 260 (1989) to support his assertion. In Sofie, a civil case, the court concluded that a statute placing a limit on noneconomic damages

---

[4] Lee categorizes restitution as a punishment and cites to a line of United States Supreme Court cases—Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and S. Union Co. v. United States, __U.S.__, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012)—for the assertion that the jury should determine facts that warrant punishment. But, the Ninth Circuit has already explicitly held that these cases do not extend to restitution. See United States v. Green, 722 F.3d 1146, 1150-51 (9th Cir. 2013); And, the court in Green noted that while the United States Supreme Court has not yet decided whether that line of cases applies to restitution, it has stated in dictum that applying the cases to orders of restitution would " 'cut the rule loose from its moorings.' " Id. at 1149-50 (quoting Oregon v. Ice, 555 U.S. 160, 171-72, 129 S. Ct. 711, 172 L. Ed., 2d 517 (2009)).

was unconstitutional, because it interfered with the jury's traditional function to determine damages. Id. at 638. Lee provides no authority to support his assertion that the article I, section 21 analysis in Sofie applies in a criminal setting to the determination of restitution. Thus, we reject his argument that he is entitled to a jury determination of restitution on remand.

We reverse and remand.

Appelwick, J.

WE CONCUR:

Spearman, J.

Dwyer, J.